Welcome to the Fourth Circuit. Judge Wynn and I are happy to have Judge Gibney join us on our first case, Center for Environmental Health v. Regan. Mr. Sussman, we'll hear from you when you're ready. I'm ready, and good morning, Your Honors, and may it please the Court, there have been many references in this case to chemicals that are described as PFAS, P-F-A-S. This is a large category of chemicals that, by EPA's count, numbers over 6,500. I want to emphasize that this case is not about the broad PFAS class, but a much smaller set of PFAS that are manufactured by a specific company, Comores, in Fayetteville, North Carolina, that has polluted the Cape Fear River and surrounding area for 40 years. Over 500,000 people in eastern North Carolina use drinking water from municipal systems or private wells that are contaminated by these PFAS. Several of the PFAS... Mr. Sussman, we're fairly familiar with the factual background, so if it would help you to move on to your particular legal arguments, please feel free to do so. Sure, sure. I think that our bottom line point here is that we submitted a detailed, highly scientific petition for testing. EPA refused to require 97% of the studies that we asked for, but it said that it was granting the petition because of testing, not on these chemicals, but on the broad PFAS class under its national PFAS testing strategy. In the EPA grant, EPA says through our testing methods you're going to get 39 of the 54 tested in some way, and that 15, the remainder, didn't qualify. Well, actually, under the PFAS testing strategy, only seven of the 54 chemicals will be tested, and it's not even clear that those chemicals will be tested because the strategy is a very slow-moving process that may change over time. On the rest of the PFAS, I think... If the EPA had simply said, we grant it, would that have been sufficient? No, I don't think so. I think the statute requires more. EPA said that they granted the petition, but all they said is, we grant the petition and plan to require testing on PFAS. They didn't say... But to say, we grant, would simply say, we grant, you understand that point would be, grant what you've asked for, but wouldn't you have to wait until they start the process before you could make a complaint? I think that granting the petition requires, under the statute, a pretty high degree of specificity by EPA. It can't say, we're granting the petition that we may require testing on some chemicals. I don't think that's... Well, the grant seemed to go... I mean, scientific information is not going to be my long suit, but in reading through the grant, it seemed like that the EPA went into a lot of detail tracking the statute to say, here the statute says, we're to group a bunch of these chemicals by class, and this is how we do the testing, and Congress has required us to consider the economics and the scale of it, and we're also to reduce animal testing, and we are to, we're to test in tiers, and they went through and explained all that, and why that was the best way to go, and what they were required to do by the statute. So, it seems like your argument almost is, even though the Congress has written out the statutory method to do testing, by virtue of filing your petition, you get to override the congressional directive. We're not overriding the congressional directive. We are trying to implement the congressional directive, and this is a statutory provision that says citizens have a right to go to EPA, to ask EPA to initiate a rulemaking to require a specific rule or order requiring testing. What EPA did here is it said testing may be necessary, but it didn't say that we're going to require testing on the 54 chemicals, and it didn't say we're going to require the key studies that you asked for. For example, we asked for... Did you request a rule or an order in this case? Did you petition? A proceeding. Okay, you requested a proceeding, and the proceeding results in a rule or an order. Is that correct? Well, that's right. And then the rule or the order will say to Chamorros, you have to control how you make PFASs. Is that correct? Well, the order would say to Chamorros, here are 54 chemicals or 5 chemicals, and you need to test those chemicals. You need to test those chemicals to look at the following health effects. You need to test these chemicals using the following methodologies. When the rule or order is issued, interested parties can file an action in the district court saying that that's inadequate, can't they? Well, they can. I don't personally think that there's much of a remedy there. Well, you couldn't tell EPA how to conduct its tests, could you? Well, I think we can ask EPA to test the following chemicals. We can ask EPA to test them for cancer or developmental toxicity or neurotoxicity, and we can say to EPA, we'd like you to conduct these types of tests. And that's exactly what we did here. But EPA didn't address any of that except to say, in a number of instances, we're not granting specific studies that you asked for. So this is a provision of the statute that grants us a de novo hearing before the district court if EPA has denied the petition. And in that de novo hearing, the court must apply the testing criteria in the statute, fairly straightforward. And if those criteria are met, the court must, and the statute is very clear about this, the court must direct the agency to initiate a proceeding granting the relief that the petitioners asked for. How detailed can the court's order be to require EPA? Can it say, you shall do titrations of such and such an amount of PFSA? Well, I don't think it needs to be detailed to the nth degree. How do you draw the line? How do you draw the line of what the court can order EPA to do and what it can't order EPA to do? Well, a court, first of all, can only direct EPA to propose a rule. EPA retains control over the final rule. There's no doubt about that. In directing EPA to propose a rule, it must be a rule which tracks and responds to the petition. The relief must be to grant the actions requested in the petition. So EPA does not need to go to the nth level of detail and say 40 mice rather than 60 mice. But if the petition requested testing on 54 chemicals after a de novo proceeding, I would say that under the plain meaning of the statute, the court must direct EPA to propose a rule requiring testing on those 54 chemicals. Now, EPA is going to have some latitude to determine the scientific details of that testing. But the statutory command is clear, which is you grant, you require the agency. Let me ask you, you seem to maintain that by asking for these testing on the 54 PFAS here, the EPA had to conduct tests on the 54. I don't think that's necessarily true. But it seems as though your argument is more to the level of de novo review, the failed district court, to conduct a de novo review. The EPA may very well be able to do just what it did, but as a de novo review, when you're looking at this, you can't just accept that EPA says, well, we're going to throw out 15 of them because they don't meet it, or we're going to do testing maybe on these. They could do that, but they're going to have to bring something forth on a de novo review as to why they chose to do that. And so ultimately, it could go in that direction. But it seems to me your emphasis is on the de novo review, not what you do, but EPA, you must tell us why this is necessary, because this is a de novo review. This is not a Chevron or a Skidmore deference review of what you've done. Yeah, I would agree with that, and I think that many of the issues that EPA raised in their petition response are issues that actually should be adjudicated in a de novo review. The problem is that EPA closed the door to de novo review and framed their petition response in a way that deprived us of our ability to have a de novo proceeding in the district court. So to get to, I guess the point I'm saying, as I read it, it's not really the testing, it's these data gaps. When you identify data gaps that are there, it is that that they must make a determination of whether testing is necessary. That may end up with not all 54, but at least they got addressed, at least the point that you and your petitioner made on the data gaps. Is that correct? I did fully understand, Your Honor. In other words, you have alleged that there are data gaps here, and the statute requires that. I mean, you got that part in it. How do you get to determine how those data gaps can be addressed? And testing typically is the way you would do it. And I don't see it as you're saying you got to test every one of these, but you certainly, where there's a data gap that exists, you got to have something there to indicate how you're going to address that. Is that my understanding? I think that's fair. Maybe in the end, you don't have to test every one of the 54. Maybe there are arguments that some subset of the 54 should be tested. But I come back to the basic point that those are issues for the de novo proceeding. And EPA can't say, well, I've got your petition here, and we're not going to do anything you ask for, but we're granting your petition. And you can't go to court to seek the remedy that Congress gave you. And I think the proper thing for EPA to have done here is to say very straightforwardly, look, we don't agree that this is the way to go. We have a different idea on the best way to go. Fine. But because we have a different idea, we're denying your petition. We're not going to give you what you wanted. And that would have been very straightforward. And we would right now be in a de novo proceeding before the district court. But we have basically Mr. Sussman, you're over your time, and you've got some time left. Oh, okay. I'm sorry about that. Sorry. You'll have some rebuttal time. Ms. Melton. I take it the basis of your argument is that we don't have jurisdiction in this case because the petition was granted. Is that correct? That's correct, Your Honor. We also believe that the claim is moot because what they could get in the de novo proceeding is for the court to order the initiation of a proceeding, not for the court to dictate to EPA the particular tests that would have to come of that proceeding. And I think that that's supported by the language of Section 21-4B. It says that the court, excuse me, the petitioner shall be provided an opportunity to have such petition considered. And if the petitioner demonstrates that information to the administrator is insufficient and that the chemical may pose a risk, that the court shall order the administrator to initiate the action, not actions, the action, which we think refers to the section of TSCA, so like a Section 4 proceeding requested by the petitioner. And I would point out that this textual interpretation I think is sufficient, but the legislative history also supports that. It's quoted by the district court in footnote 6. The Senate committee report and the House report both have similar quotes about this, and that says essentially in a de novo proceeding when the court is reviewing what is happening, it can order EPA to initiate a proceeding, but it cannot dictate the contents or outcome of that proceeding. Can you do that if there's no order stage procedure? So there could be no proposed order. I don't think that the court could, contrary to what my colleague suggested in reply, I don't think the court could order a proposed order that would be adding a procedural requirement, which is prohibited by Vermont Yankee. But the court could order the action, which is to initiate a proceeding under Section 4. So you want us to add a proposal step? No, no, I'm saying the court would be prohibited from doing that. That's not in the statute, and the court is not at liberty to add procedural steps that are not in the statute. We think that the action requested by the petitioners is the initiation of a proceeding under Section 4. And where that proceeding goes, it may be a rule, it may be an order or multiple orders, but it's not for the court to dictate. Just for our own edificate, what's the difference between a rule and an order when it gets to that point? So Congress added, so it used to be under the original version of TSCA that EPA could only compel companies to conduct testing by rule, meaning that they would go through essentially an APA type rulemaking procedure where the agency would propose a rule, it would accept comments on the rule, and then it would put forward a final rule. Congress believed that that was not fast enough. It wanted to encourage EPA to do this more expeditiously, and so it gave EPA the option of compelling testing by order. And the order does not have, my understanding is that the difference is essentially that the order does not have a proposal stage. So let's say you prevail, things go along, and there's an order or a rule, and you go through this testing, and the plaintiffs think it's woefully deficient. What are their options at that point? Well, I would point out, Your Honor, just as a factual matter, three orders already have been issued, and there are more on the way, so it's not hypothetical. I mean, EPA is, the proceeding is ongoing, and things are moving along. But what are these orders say? Well, one of them is in the record, and the other two we believe you could take judicial notice of. They are extremely detailed. They make, they say a lot of things. They make the findings that Congress directed EPA to find under Section 4A, so information is insufficient, the chemical may present an unreasonable risk, testing is necessary. It lays out EPA's thinking on all of that. It puts forth the companies that are compelled by the order to conduct testing. It sets forth the specific testing that needs to happen. It sets forth the timeline on which that testing needs to happen, the reporting obligations of the company, the exceptions process for the company, and all of that is judicially reviewable in a proceeding under Section 19. And so one of the things, and I think, I can't remember if it was Judge Gibney or somebody else that mentioned, yes, absolutely, petitioners could seek review of any final rule or order under Section 19, but that's not the limit of their remedy here. I think they have other options as well. They can always file a new petition, and EPA would be compelled within 90 days to respond to that petition. That is a very substantial remedy that they could avail themselves of. If they think a particular chemical is not being prioritized enough, if they think the existing testing that EPA is going through is not getting the information that needs to be obtained, they could submit a petition and say, we think testing is necessary on this specific PFAS because the testing you're doing is not sufficient. Of course, if they think that EPA has some kind of non-discretionary, if they can identify a non-discretionary duty, and they think that unreasonable time has lapsed, they could bring an APA 7061 claim. They could bring a citizen suit against Kim Morris if they think Kim Morris is violating the statute under Section 20. Congress provided many different avenues for review in TSCA, but Congress did not... Here's the question I have on this. They did provide a method of review, it's called de novo, which really kind of sets this apart. It's a very strict type of review, it's de novo. So when the EPA makes a determination, you've got 54 allegations here for PFAS, and they indicate their data gaps in the petition, all those different things that are there. And you have all this, and the EPA makes a determination with seven of them, okay, maybe we'll go ahead and test those. We'll go with that. Fifteen, we don't think they're in, and then the rest of them, I guess they're out in a class, so to speak. All well and good. A de novo review of that means what? I mean, do you then have the EPA come in and bring experts as to why that is so and lay it out, or do you just as a court says, okay, you granted it, and that's it? I mean, that seems like there's something missing in that scenario. It's almost like the EPA is sliding into a deference level of review. We did it, therefore, we grant it. But you don't have the proof of it for a de novo review by the court. That's the problem I'm having with this. A few responses, Your Honor. There's a lot going on in that question, and the first thing I'd like to say is EPA has not made a determination to test seven or 39 or however many. Where did those numbers come from? I didn't make up seven. They said seven, fifteen. That was what EPA anticipated at the outset of the proceeding, that it would be tested. What makes it so an anticipation of it is my question on a de novo review. Apparently, it has some relevance. So how does the court look at it and say, okay, you anticipated, we're just going to take it? I understand your question, and I will address the issues about de novo, but I really want to emphasize, because it is important, the factual predicate of my colleague's argument is EPA has just refused to do these things, and that's simply not true. EPA has said this is what we think is going to happen, and it said that in December 2021. Time has passed, and things have actually changed. The chemical office's working definition of PFAS has changed, and now they think they are going to end up testing more than they originally anticipated, and that is part of the reason why Congress did not want to provide review of ongoing proceedings, because the Congress understood that science as to emerging chemicals is changing rapidly. PFAS is at the forefront of science right now, what counts as a PFAS, how to address them. It is truly at the cutting edge, and EPA is continually looking at and revising how it is going about this testing. That is true, and that's what you call deference when you're looking to seeing what they're doing. I'm talking about a de novo review. When someone files a petition, let's say a new petition, and then EPA says, well, you know, I've got, that's already covered by some testing I've done, and then they just say, well, we grant the petition. Is that, hear my question out. I'm trying to understand your position. The idea is to try to educate me. You know more about this than I ever will know, so help me out on this. I'm saying, we're talking about a de novo review here, and if you file a petition with 54, it says, well, we got testing already covered that. EPA says it, and so we grant it. Your position is the district court has to take that? That's a de novo review? In that situation, if EPA has granted, there would be no de novo review, but my position is that EPA said that it was going to do testing. The testing strategy was not a commitment to do anything. It was just a document that EPA said, we're hoping to do this, but when they granted the petition, they said, okay, we're going to initiate a proceeding, and we are going to test for these chemicals, for the PFAS in the petition, and others, and what that looks like is going to change over time, as appropriately so. EPA has learned more and will continue to learn through its testing orders. This is an iterative approach. That is what Congress intended, and that is appropriate, but to your Honor's question about the de novo proceeding, the de novo proceeding is very clearly laid out in section 21b4, and it essentially says that what will be considered in that proceeding is the petition itself, and whether the petition has demonstrated that information about chemicals is insufficient, and in the absence of such information, that those chemicals may pose an unreasonable risk. So essentially, the court is asking, are there data gaps? There is nothing in section four that suggests that the court could dictate to EPA how to fill those data gaps. How do we view the petition? You say you look at it to see if it's there. How does it make that determination? Do you take what they say, as we do in other 12b6 in summary judgment, that it's true? We accept it, assume that it's true, what they're saying in the petition? Are you talking about the petition or the complaint, your Honor? Either one, both. Give me the complaint. How do they view that complaint and the petition? Well, the fact of whether something is a grant or denial is not a fact. It's a legal conclusion, and so the court here very plainly said, both in the hearing and in its order, I'm not required to accept plaintiff's characterization of what happened here as a denial, and I agree with that, whether it's the complaint or the... Well, but EPA simply says it's a grant, and they're not granting anything. That's not a grant, is it? That's really a denial. That's not what happened here, your Honor. What happened here is... And answer my question. If EPA's grant is a grant of so little that it's effectively a denial, it's a denial, isn't it? What counts as a denial... You can't just call something a grant and say, oh, you won the case, but you don't get any relief. What counts as a denial is the refusal to initiate a proceeding. EPA initiated a proceeding here, and that proceeding is ongoing. Everything else is essentially details. Okay, we're going to just test distilled water. That would be a denial, wouldn't it? That's not this case, your Honor. No, I understand it's not this case, but if that's what they said, it would be a denial. You just can't call something a grant and make it a grant, can you? I understand your Honor's concern, and I do think it would depend on what the petition actually said, but I also think that the agency is entitled to a presumption of regularity, and absent a compelling showing that the agency was engaged in bad faith, I believe that the court would have to accept that EPA has granted, and if EPA does not actually act on that grant... The foundational question is, in that instance, that's not a grant, and because you see, you understand the concern, it's not a concern, you're jumping ahead. The foundational thing is there are instances in which the EPA can say we grant, but in fact, they are not granting. That is something you can accept, that that can happen. You're not saying it's happening here, but it can happen, and then once you get there, the question is, did it happen here? I understand that that is the court's concern, and I will just say factually, that's not supported by the Evans. There have been about 85 petitions... It's more than just a concern, it seems to be the issue in this case. That's the issue that's being brought to us, is saying, you said grant, and I don't want to water it down and say that we appear to have a concern. This is what's being brought to us. I understand. Hear me out. If I may finish the point. Hear me out on this. This is what's being brought to us, is the question of whether what you call a grant and effectively denied it, and part of it is when you say, well, we already got this, we've done this, and we got this, and that slides into what I say is, what is the duty of the court on a de novo level, is to determine whether this grant that you call it is in fact a grant. I understand, Your Honor, and I think that if EPA had declined to initiate a proceeding, that would be a denial, whether it was through a formal publication in the Federal Register, whether it was through a constructive denial by failing to act on the petition, but I want to go back to something that Your Honor actually said earlier in your exchange with my colleague. You said that what if EPA had just said grant and said nothing else, and actually, I think that that is permissible under the statute. Section 21 very clearly says what EPA has to do when it denies. Well, all well and good. I grant you. I think that's grant. But the question really here is how far afield can the EPA go before it becomes a denial? In other words, Judge Gibney gave the example of the steel water. I mean, yeah, that would be totally out there, but somewhere in between there, when you have a petition and then the EPA say grant, and then you read it, it says, no, you didn't give me what I want. I mean, why is it that the district court should not be required at least to make some review to determine, did you do it? And showing how you came to the conclusion, EPA, that they would be required to then come forth and say, okay, you don't need to do it because these seven we anticipate are going to be tested. With these 15, we anticipate are not even PFAS. At least then the rest of them, we're going to group in a class. Where does that come from? Your Honor, if EPA has initiated a proceeding under Section 21, and it has given petitioners the type of proceeding that they've asked for, meaning a proceeding under the particular provision of TSCA, that is all at this time that the court can do. Now, if EPA doesn't do anything in that proceeding, or if it does something totally off base, at a later date, petitioners might have a remedy, either under the APA 706-1. I don't misunderstand you. As I understand your position, all they have to do is initiate a proceeding. It doesn't have to resemble anything that they're asking for. Listen to me out, because you just said it. In the petition, all they have to do is say, we're going to initiate a proceeding. That's the end of that. I did not. Your Honor, let me be clear. We think that the court can take a look, if it wants to, at the complaint. Obviously, it can take a look at the petition. Is this the Court of Appeals or the District Court? Either Court. This kind of action initiates in the District Court. The District Court can and did look at the content of the petition, and it looked at the grant. I'm trying to distill these other questions down to what's the actual nub here. Petitions filed, the EPA responds, it says there's a grant. I think we've already established grant doesn't necessarily mean grant, just by virtue of the fact it says that. So, the petitioners then bring this proceeding in the District Court. At that point, what exactly is the District Court supposed to do, and what is it to look at to make its determination? I think it could look at the petition itself and the response letter, as it did here, as well as the allegations in the complaint. But I want to be really clear that although the court can look at EPA's response letter, the response letter itself is not the thing on review. This is not EPA review, where you're looking to see whether the agency was arbitrary and capricious in saying yes or no to each individual thing. They're just looking to see whether EPA, in fact, did initiate a proceeding. And the answer here is plainly yes. Petitioners do not dispute that EPA has initiated a proceeding. They have conceded that. They just think that the proceeding here is not the right one, and we have substantive disagreements about the appropriate way to proceed, about which test should come first, about how to do this, how to categorize. But those questions, Your Honors, are vested in EPA's expert discretion, and that is appropriately so, because at the end of this proceeding, as we, and even in the course of the proceeding, as we've seen, the EPA's position, because it is an expert in this area, under Chevron. Is that what you're saying? No, Your Honor. And in fact, what I'm saying is that we are not yet at... Well, differentiate Chevron's deference from expert deference to EPA. Your Honor, what I'm saying is that we are not at the de novo proceeding stage yet. I'm asking you to answer my question, because I'm trying to get to the basis of this. I'm trying to understand how this is coming out, because it really does seem like, to me, there's deference here. And I'm asking you to help me out. So differentiate Chevron deference and the whole of that court from a determination that EPA can do something because it is an expert in this area. EPA is not saying that because it reads TSCA, it should, in a particular way, require this testing and that testing. Although, of course, that is also an issue. Your EPA is saying that because Congress has said, EPA, you are the one who has to determine how to best fill PFAS information gaps. You are the one who gets to determine, consistent with the statute, what tests to pick. That is what I am saying. That is not Chevron deference. And I want to be very clear, Your Honor, we are not at a de novo proceeding right now. The de novo proceeding would only happen if EPA has denied the petition, which is not the case here because EPA has initiated a proceeding and that proceeding is ongoing. Well, that goes back to the reason we're here. We're saying if we determine this denied, it's de novo. That's the whole point about it. Yeah, you're right. If we agree, it's granted, we're not at de novo. We're where you are. That's the issue that's in this case. I understand, Your Honor. And if that happens, what would happen is that this would go back to the district court and the district court would determine whether the petition demonstrates that there is insufficient information and that the chemical may pose a risk. But EPA agrees with petitioners about that. That's why it granted the petition. So we don't really understand the purpose of a de novo proceeding. The real purpose of the de novo proceeding is, in Mr. Sussman's view, is for him to get an order directing EPA, do this test, do this test in this order, do that test there, and then order, follow it up with this. And we do not think that the statute, there's nothing in Section 21 that allows petitioners to micromanage the agency's process during a proceeding. In your view, if there was a de novo proceeding, would the court be able to do anything other than what EPA has already done here in terms of issuing a proposal? We don't think so, Your Honor. We don't think that the court would be able to do anything other than say, EPA initiated a proceeding to fill PFAS information gaps under Section 4, and that is also why we believe that this case is moot. All right. Let the opposing counsel go over a little bit if you've got anything else to counsel. Say in the next few seconds. We think that the district court's order should be affirmed. Thank you. Okay, thank you. All right, Mr. Sussman, you've got a little time. Yeah, I wanted to read a statement that the D.C. Circuit has made about Section 21. It's described Section 21 as, quote, an unusually powerful procedure for citizens to force EPA's hand. And I think what you're hearing from the government is a vision of Section 21, which would not be a powerful procedure for citizens and would not, in fact, force EPA's hand because EPA could look at a petition, say, I disagree with everything in here, but I'm granting the petition and I'm commencing a proceeding which has nothing to do with what the petitioner asked for. And that's the reality of this case. And under the government's position, that label that EPA has attached, the label of granting the petition, would be, in essence, entitled to a presumption of regularity, to use counsel's word. I would submit that the case law is fairly clear that an analogous... What is your best case in a situation like this? Your best case for you? Well, the best case for us would be that, you know, the agency would say, well... Now, what I'm asking for is what court decision has addressed this particular issue and supports you the best? I think the position is that under any fair reading of the agency's action... Okay, we're not connecting here. What I'm looking for is another court decision that has addressed this issue and that it supports your argument here. Well, there's a court decision from the Northern District of California in which the agency denied a petition. All right. Are there any court of appeals decisions? Well, there's plenty of dicta in court of appeals decisions. I don't know... All right. What's the case with the best dicta? Well, I would say that this D.C. Circuit statement here that I just read you is... Help us out here. What's the name of the case? The name of the case is Trumpeter Swan Society v. EPA. It's 2014 D.C. Circuit case. And again, I think the key words are powerful procedure to force EPA's hand. That was what the court said Section 21 was all about. Now, on the question of whether there's a grant or denial, there's plenty of case law out there that says that courts must not defer to or accept the label that the agency applies to its action. Whether the label fits or not is a de novo issue for the court. It's not an issue involving any deference to the agency. And so... Well, what about her argument that it's moot, that even if we treat this as a denial, there's really nothing the court can order since they've started a rulemaking proceeding? Well... May not be the one you want, but they've started one. And your remedy is to come back at the end and say, well, their rule is arbitrary and capricious. To come back at the end, the end may be eight or nine or 15 years from now and... Somebody else will come back then because you and I won't be doing it, will we? Right. No, I definitely won't be around. But that's a very, very long process. I'm not even sure that at the end of the process, if the agency promulgates a rule on chemicals A, B, and C, we can come in and challenge that rule because there isn't any testing required on chemicals C, D, and E. So I don't view that as a real remedy. The real remedy is in Section 21. Well, Houston Chemicals says in that circumstance, just file another petition.  We filed it almost four years ago and it put a specific testing program in front of the agency. The agency had to either grant or deny that program. And if it denied it, we would have a right to go to court. I think the legal question here is very simple. Was this a denial or was this a grant? Based on the plain meaning of the word grant and the plain meaning of the word denial, all you need to do is look at what the petition requested. So what remedy are you going to ask? If this court says, OK, it looks like a denial, what do we do at that point? What do you want us to do? Well, I think you should remand to the district court, say that you believe that as a matter of law, this was a denial of the petition. You need to proceed to the de novo proceeding. What would that proceeding look like? We're not going to tell them how to make rules. Well, first of all, if you will, what would it look like? I mean, to initiate a new proceeding, what would the district court order them to do? Well, again, the statute is very clear. The statute says that if the court determines by a preponderance of the evidence that the testing criteria are met, the court must, not may, must direct the agency to take the action requested by the petitioner. Why wouldn't it not be that it simply would go back and the court could initiate a proceeding and the proceeding would be to the EPA, OK, now address these specific gaps in the information that's been identified by the plaintiffs, which would give them an opportunity to do so. So if they did it, then you're probably out. If they don't, then the court can then make a determination otherwise. Well, I think that if the court says, OK, the testing requests in your petition are supported by the statutory criteria, you've met your burden, you've demonstrated inadequacy of information, you've demonstrated potential unreasonable risk, then I think the path of the court is very clear under the statute. And it's to direct the agency to do what the petition asks for. The statute is very explicit about that. And what that means is... What case can you cite for us that has provided that remedy? I think that the asbestos case in the Northern District of California has required that remedy. It basically ordered the agency to undertake a rulemaking that remedied the deficiencies of the agency's petition response and told the agency there are certain gaps in your response to the petition. Your proceeding must remedy these gaps. All right. Thank you very much, Mr. Sussman. We will come down and greet counsel, and then we're going to take a very brief recess and come back for the rest of the docket.
judges: G. Steven Agee, James Andrew Wynn, John A. Gibney Jr.